# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF ALABAMA
# NORTHERN DIVISION

| | |
|---|---|
| ANITA BOYLE, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   CASE NO.  2:17-cv-282-WKW-DAB |
| | ) |
| MONTGOMERY COUNTRY CLUB, | ) |
| | ) |
|     Defendant. | ) |

## REPORT AND RECOMMENDATION

Plaintiff Anita Boyle sues Defendant Montgomery Country Club for discrimination in violation of the Age Discrimination in Employment Act, as amended, 29 U.S.C. § 621, *et seq.* ("ADEA").  This matter is before the court on the Defendant's Motion for Summary Judgment (Doc. 16).  The parties have had the opportunity to fully brief the matters, and the court has taken the motion under advisement without oral argument.  For the reasons that follow, the undersigned Magistrate Judge recommends Defendant's Motion for Summary Judgment (Doc. 16) be **denied**.

**I.**  **Jurisdiction**

The Court has jurisdiction over the subject matter of this civil action pursuant to 28 U.S.C. § 1331 and 1343(a)(4).  The parties do not contest personal jurisdiction or venue, and the court finds sufficient information of record to support both.  *See*

28 U.S.C. § 1391. On May 31, 2017, the above-styled matter was referred to the undersigned for recommendation on all pretrial matters by United States District Chief Judge William K. Watkins. (Doc. 7); *see also* 28 U.S.C. § 636(b); Rule 72, Fed. R. Civ. P.; *United States v. Raddatz,* 447 U.S. 667 (1980); *Jeffrey S. v. State Bd. of Educ. of State of Ga.,* 896 F.2d 507 (11th Cir. 1990).

## II. Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling on a motion for summary judgment, the Court construes the facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). However, when faced with a "properly supported motion for summary judgment, [the nonmoving party] must come forward with specific factual evidence, presenting more than mere allegations." *Gargiulo v. G.M. Sales, Inc.*, 131 F.3d 995, 999 (11th Cir. 1997).

Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Summary judgment may be granted if the non-moving party's evidence is merely colorable or is not significantly probative." *Sawyer v.*

*Southwest Airlines Co.*, 243 F. Supp. 2d 1257, 1262 (D. Kan. 2003) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–51 (1986)).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. "Essentially, the inquiry is 'whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Sawyer*, 243 F. Supp. 2d at 1263 (quoting *Anderson*, 477 U.S. at 251–52).

### III. Background and Statement of Facts

Plaintiff, Anita Boyle, initiated this action in May 2017 against her former employer, Montgomery Country Club, arising out of her termination in November 2015. (Doc. 1). She alleges she was fired because of her age in violation of the ADEA. *Id*. ¶ 21. She was born in 1951 and was 64 years old when she was terminated. *Id*. ¶¶ 5, 7, 10; (Doc. 21-2 at 13:5–6).

Montgomery Country Club ("MCC") is a private, member-owned club that offers golf, tennis, swimming, social activities, and dining. (Doc. 16 at 6). MCC offers its facilities and services to members and non-members for special events such as weddings, group meetings, formal balls, reunions, professional seminars, and holiday parties. *Id.* In April 2010, Boyle was hired as MCC's Catering Director which is also referred to as Special Events Director. (Doc. 21-2 at 20:11–15, 80:11–

15). Her responsibilities included promoting, planning, staffing, and executing catered events held at MCC. *Id.* at 82:10–83:16. She received increases in her salary and commission over her years of employment at MCC as a result of her favorable evaluations. (Doc. 16 at 7).

Prior to working for MCC, Boyle had extensive experience working for private clubs, primarily in general manager positions. (Doc. 21-2 at 47:8–72:10). She is a Certified Club Manager, a certification conferred by the Club Management Institute that covers training and education in various aspects of private club management, including financial management, accounting, and human resources. *Id.* at 24:3–30:12. MCC was aware of Boyle's experience. (Doc. 21-3 at 73:15–20).

In April 2014, Raquel Townsend was appointed to be Boyle's assistant in special events. (Doc. 21-5 at 7:5–8:11). Townsend was initially hired in October 1996 as a server prior to becoming co-manager of the casual dining room in 2010. *Id.* at 7:5–20. Townsend was moved into the position of Boyle's assistant because she had been struggling as co-manager in the casual dining room. (Doc. 21-3 at 33:25–34:22, 74; Doc. 21-2 at 96:3–19). Townsend is 27 years younger than Boyle. (Doc. 16 at 10, ¶ 11).

Townsend had never previously worked in special events other than as a server. (Doc. 21-5 at 8:15–21). As Boyle's assistant in special events, Townsend had difficulties. (Doc. 21-1 at 99:20–100:8). While Townsend could handle small

events, she was incapable of promoting the club, handling details of events, and effectively communicating with customers. *Id.* at 99:20–100:8, 115:2–20. As a result, Boyle was required to oversee and/or follow up on Townsend's work. *Id.* at 123:12–15.

Tom Lee is MCC's general manager and is 17 years younger than Boyle. (Doc. 21-3 at 12:19–22, 24:25–25:1). Most of MCC's service lines have a director or manager and all of the departments are supervised by and report to Lee. (Doc. 16 at 6, ¶3). Dining and special events services are operated under the Food and Beverage Department. *Id.* In January 2015, Lee told Boyle she looked "old and tired" and asked her if she needed time off. (Doc. 21-2 at 157:4–158:8). In the late summer of 2015, he suggested she "retire" and make baby blankets and hats. *Id.* at 167:1–23.

In April 2015 Lee offered Boyle an incentive for an additional bonus for the 2014/2015 fiscal year, which ended October 31, 2015, if special events reached $750,000 in sales. (Doc. 21-3 at 104:23–105:12). In October 2015, Boyle not only reached the goal, but exceeded it by $90,000, which exceeded anticipated sales for the year by $185,000. *Id.* at 106; Doc. 21-7; Doc. 21-3 at 50.

In the summer of 2015, the club's executive committee told Lee to "tighten the belt," and he focused on the Food and Beverage department to make cuts. (Doc. 21-3 at 36:24–37:5, 44:20–45:4). In August 2015 he began looking to identify

someone to remove from that department. *Id.* at 41:10–15. The following people Lee considered included Boyle, Townsend, Xavier Gonzalez (beverage manager), William Hall (food purchasing), and Sam Lundrum (main dining maître d'). *Id.* at 51:2–8, 58:5–6, 61:14–62:3. Boyle is the oldest in this group.[1] (Doc. 16 at 10, ¶11). Lee considered their tenure, financial impact, and how removing them would impact membership of the club. (Doc. 21-3 at 50:20–51:1, 57:8–14).

According to Lee, Boyle's position had less of an impact on club membership because special events typically did not deal with members on a day-to-day basis. *Id.* at 66:17–67:16. Additionally, Boyle had the lowest tenure of the four. *Id.* at 69:17–19. With regard to her financial impact, Lee minimized Boyle's performance by claiming that people did not choose to have functions at the club because of anything Boyle did, but rather simply because they wanted to come to the club. *Id.* at 70:6–14. Notwithstanding, in the year prior, Lee stated in a performance plan that generating club business and increasing revenue was an expected part of her job. (Doc. 21-6).

On October 26, 2015, Lee signed off on a form giving Townsend a raise in salary which was only $500 less than what Boyle was earning despite Boyle's proposed modest increase for Townsend. (Doc. 21-3 at 79:23–81:21). In late

---

[1] According to Defendant's brief, Gonzalez is currently 61, Hall is 62, Landrum is 58, Townsend is 40, and Boyle is 67. (Doc. 17 at 5).

October, Lee made the decision to terminate Boyle in order to reduce overall operating costs. *Id.* at 41:10–17. Lee never considered asking her to stay on at a reduced rate of pay. *Id.* at 90:22–91:12. Lee told Boyle her position was being terminated and her assistant, Townsend, was going to do her job. (Doc. 21-2 at 201:7–20, 203:1–3; 21-3 at 95:23–96:12; 21-3 at 49). The decision was purportedly driven by an effort to reduce operating costs; Lee stated it had nothing to do with her performance. (Doc. 21-2 at 75).

Boyle explained to Lee that Townsend was not ready to take over special events, handle large events, and wasn't comfortable meeting people. (Doc. 21-2 at 203:3–5; 21-1 at 1; 21-3 at 95:23–96:12). Lee claimed that he was going to help Townsend through the end of 2015 and thereafter evaluate. (Doc. 21-2 at 203:5; 21-3 at 71:22–73:14, 78:9–17). Notwithstanding, in December 2015, Lee hired Erin Metzger (currently 60) to be Townsend's assistant. (Doc. 21-3 at 87:4–23). Lee never offered the assistant position to Boyle. *Id.* at 90:7–14. Replacing Boyle/Townsend with Townsend/Metzger saved MCC approximately $13,000 in salaries, but special events sales dropped in the 2015-2016 time frame under Townsend/Metzger by $48,998. (Docs. 18-3, 18-4, 18-5, 21-7).

MCC moves for summary judgment arguing that Boyle cannot prove that her age was the "but-for" cause of MCC's decision to eliminate her position. (Doc. 17). MCC argues that Boyle cannot produce direct or circumstantial evidence of

discrimination, and MCC submits it had a legitimate non-discriminatory reason for eliminating her position. *Id.* Boyle responds that a reasonable inference from the evidence is that her position was not eliminated, but rather she was replaced by her less-experienced assistant who is 27 years younger than Boyle is. (Doc. 22).

**IV. Analysis**

The ADEA makes it unlawful for an employer to discharge "any individual or otherwise discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). The prohibition in this statute applies to individuals who are at least 40 years of age. 29 U.S.C. § 627(a). "A plaintiff may establish a claim of illegal age discrimination through either direct evidence or circumstantial evidence." *Van Voorhis v. Hillsborough County Bd. of County Comm'rs*, 512 F.3d 1296, 1300 (11th Cir. 2008).

The Eleventh Circuit has defined "direct evidence of discrimination" as "evidence which, if believed, would prove the existence of a fact [in issue] without inference or presumption." *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990) (quoting *Carter v. City of Miami*, 870 F.2d 578, 581–82 (11th Cir. 1989)). "[O]nly the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of age, ... constitute direct evidence of discrimination." *Carter*, 870 F.2d at 582; *see Earley*, 907 F.2d at 1081 (11th Cir. 1990) (management

memorandum saying, "Fire Earley—he is too old" would be example of direct evidence); *Williams v. Gen. Motors Corp.*, 656 F.2d 120, 130 (5th Cir. 1981) (direct evidence would be a paper scrap with the notation "Lay-off Too Old" beside a plaintiff's name).

This Circuit recognizes that not every comment related to an individual's age constitutes direct evidence of discrimination. *See, e.g., Beaver v. Rayonier Inc.*, 188 F.3d 1279, 1285–86 (11th Cir. 1999) (finding that decision-maker's comment that he wanted to attract "younger, engineer-type employees or supervisors" in reduction-in-force case did not rise to level of "direct" evidence of discrimination); *Young v. Gen. Foods Corp.*, 840 F.2d 825, 829 (11th Cir. 1988) (comments that employee lacked wherewithal to perform job, moved in slow motion, and was not proactive or aggressive did not constitute direct evidence of discrimination); *Barnes v. SW Forest Indus., Inc.*, 814 F.2d 607, 610–11 (11th Cir. 1987) (statement that plaintiff would have to take another physical examination "and at your age, I don't believe you could pass it," while "inappropriate and condescending," was not direct evidence of discrimination); *Mauter v. Hardy Corp.*, 825 F.2d 1554, 1558 (11th Cir. 1987) (statement that company was going to "weed out the old ones" was insufficient to present direct evidence of discriminatory intent when made by individual who played no part in the decision to terminate the plaintiff); *but see Van*

*Voorhis,* 512 F.3d at 1300 (decision maker's comment that he "didn't want to hire an old pilot" was direct evidence of age discrimination).

Lee's comment to Boyle that she looked "old and tired" and should take time off could arguably be considered direct evidence of age discrimination under *Van Voorhis*. MCC claims Boyle did not take offense to his comments, *see* Doc. 17 at 11, but Boyle disputes this. *See* Doc. 22 at 5, n.3. Given that her termination was not until November 2015, however, Lee's comment made in January 2015 may be suggestive of the atmosphere in the Club administration, even if somewhat remote in time to support a finding of direct evidence of discrimination.

Lee also made discriminatory remarks in late summer 2015, closer in time to the date of her termination, stating Boyle should retire and knit baby blankets and hats. While this comment is not the type of blatant remark contemplated by the court in *Earley*, 907 F.2d at 1081, it would be considered circumstantial evidence. In the absence of direct evidence of discrimination a *prima facie* case of age discrimination may be established with circumstantial evidence "by proving that the plaintiff (1) was a member of the protected group of persons between the ages of 40 and 70, (2) was subject to adverse employment action, (3) was replaced with a person outside the protected group, and (4) was qualified to do the job." *Verbraeken v. Westinghouse Elec. Corp.*, 881 F.2d 1041, 1045 (11th Cir. 1989). MCC does not dispute that Boyle is a member of a protected class, was discharged, and was

qualified for the job.[2] (Doc. 17 at 13). MCC contends, however, that Boyle cannot establish MCC intended to discriminate against her on the basis of age when it eliminated her position and did not place her in another position. Considering the evidence in its totality in a light most favorable to Boyle, she was the one selected from a group of employees to be terminated and she was the oldest in the group; Lee made derogatory comments related to her being old; Lee suggested she retire and knit; and she was replaced by the much-younger and less-experienced Townsend who was promoted to her position. Although MCC argues that the position was eliminated, based on reasonable inferences, the facts suggest Townsend replaced Boyle and another person was hired to be Townsend's assistant. Thus, Boyle is able to establish a *prima facie* case of age discrimination.

MCC argues that even if a *prima facie* case of age discrimination can be established, Boyle is still unable to show that her age was the "but-for" cause of her termination. MCC contends that the need to implement cost-savings measures satisfies its burden of articulating a legitimate, non-discriminatory reason for its decision to eliminate Boyle's position. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Once MCC demonstrates a non-discriminatory reason supporting its decision to terminate her, the burden then shifts to Boyle to establish

---

[2] MCC contends that Townsend did not take Boyle's position, but rather the position was eliminated. This fact appears to be in dispute. (Doc. 22 at 17). Regardless, MCC does not dispute that Boyle was qualified for another position.

that MCC's stated reason – to reduce expenditures based on a revenue decrease resulting in a net loss the prior fiscal year – is a pretext for discrimination. MCC argues that Boyle is unable to show pretext. But in a light favorable to Boyle, she has presented sufficient evidence that would allow a reasonable juror to find that MCC's asserted reason for terminating her was pretextual. The evidence shows Boyle had success in her special events position, far exceeding anticipated sales. This, coupled with Lee's negative comments about her age and his replacing Boyle with the younger, less-experienced Townsend creates a factual issue as to whether the stated reason was a pretext. Further, MCC's claim of "eliminating" a position to reduce overhead rings hollow when a month later MCC hires an assistant for Townsend. While MCC may argue that its questionable business decisions do not support a finding of discrimination, in a light favorable to Boyle, questions of fact preclude a finding for MCC on the instant motion.

## V. Recommendation

Accordingly, for the reasons stated, it is the **RECOMMENDATION** of the undersigned Magistrate Judge that Defendant's Motion for Summary Judgment (Doc. 16) be **denied**.

## VI. Notice to Parties

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. Accordingly, it is

hereby **ORDERED** that any objections to the Report and Recommendation shall be filed on or before **November 26, 2018**.  A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.  *See* 11th Cir. R. 3-1; see also 28 U.S.C. § 636(b)(1).

**Respectfully recommended** this 9th day of November, 2018.

/s/ David A. Baker
DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE